■ PAUL W. PUZNOWSKI, Appellant, v SPIRAX SARCO, INC., Sued Herein as SPIRAX SARCO COMPANY, Respondent. (And a Third-Party Action.) [712 NYS2d 216] —Carpinello, J. Appeal from a judgment of the Supreme Court (Best, J.), entered April 5, 1999 in Montgomery County, upon a verdict rendered in favor of defendant.

On February 24, 1993, plaintiff was injured in the course of his employment with third-party defendant, Ralston Purina doing business as Beech-Nut Nutrition Corporation (hereinafter Beech-Nut). At the time, he was alone in the basement of Beech-Nut's manufacturing facility performing routine maintenance on the plant's heating system. Specifically, he was in the process of replacing a leaking gasket on a check valve which was part of a hot water condensate return pump system when, upon removing the cover to the check valve, he was sprayed with pressurized hot water causing first and second degree burns over 25% of his body.

Plaintiff filed this action against defendant, the manufacturer of the steam-powered pump system of which the subject check valve was a component. Plaintiff claimed that defendant was negligent in designing the pump, that defendant was negligent in failing to warn plaintiff of the risk of injury and that the pump system was defective. After a week-long trial, the jury rejected all of plaintiff's claims finding in favor of defendant. Plaintiff appeals.

At trial, experts for plaintiff and Beech-Nut opined that the steam-powered pump was defective in that it should have been manufactured with a visible pressure gauge and/or pressure relief valve which would have respectively warned plaintiff of the existence of any pressure in the pump and provided an easy· mechanism for the release of same prior to disassembly. Notably, however, neither expert could explain precisely how the accident occurred, especially in light of plaintiff's testimony that prior to the accident he had turned off the steam which powered the pump, vented the steam pipe and closed both the inlet and outlet valves to the pump thereby theoretically isolating it from incoming sources of steam or hot water, a procedure he had successfully employed in the past for changing the gasket.

Defendant's manager of project engineering, who designed the subject pump system, testified that the procedure plaintiff claims to have followed was an acceptable method for isolating the pump system prior to any maintenance. This witness also could not explain how the accident occurred if plaintiff, in fact, took all the steps he claims to have taken to isolate the system. In the absence of any explanation as to what caused the accident, the jury was clearly confronted with the task of evaluating the credibility of plaintiff's version of his conduct prior to the unwitnessed accident, a point repeatedly emphasized by defense counsel in summation.

Against this background, we observe that resolution of claims

of negligence, failure to warn and design defects in a product liability case are typically reserved for the finders of fact (*see, DiMura v City of Albany*, 239 AD2d 828, 829-830). To set aside the jury's verdict, as plaintiff urges on this appeal, we must find that it could not have been reached on any fair interpretation of the evidence (*see, Teller v Anzano*, 263 AD2d 647; *see also, Lolik v Big V Supermarkets*, 86 NY2d 744, 746) after giving considerable deference to the jury's assessments of credibility (*see, Teller v Anzano, supra*, at 647). Given the testimony of defendant's engineering manager to the effect that the recommended steps for isolating the pump during maintenance would have relieved any internal pressure in the system thereby permitting safe disassembly, we cannot say that the evidence so preponderated in favor of plaintiff that the verdict could not have been reached on any fair interpretation of it, notwithstanding the presence of contrary testimony relating to "safer" alternatives (*see generally, Denny v Ford Motor Co.*, 87 NY2d 248, 257).

Lastly, we find no error in Supreme Court's refusal to admit into evidence a letter from defendant's chief engineer (who did not testify at trial) which was written in response to an inquiry from Beech-Nut regarding possible causes of the accident. This letter was not produced as a result of routine day-to-day operations of defendant's business so as to qualify under the business record exception to the hearsay rule of CPLR 4518 (a) (*see, Northway Decking & Sheet Metal Corp. v Clifton Steel Corp.*, 86 AD2d 944, 945). Nor do we agree with plaintiff's contention that it constituted an admission against interest.

Mercure, J. P., Peters, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed, with costs.